UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GREG SOUTHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:21-cv-00039-HAB-SLC |
| | ) | |
| AVI FOOD SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Greg Southall, who is now proceeding *pro se*, filed this action against his former employer, Defendant AVI Food Systems, Inc. ("AVI"), alleging that it discriminated against him based on his race when it terminated his employment, in violation of 42 U.S.C. § 1981. (ECF 1). Now before the Court is AVI's motion for summary judgment (ECF 38) and supporting documents (ECF 39-42) filed on April 8, 2022. Southall failed to file a response to the motion, and his time to do so has passed. (ECF 43). On May 12, 2022, the District Judge referred the summary judgment motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72-1. (ECF 45).

After considering the evidence and argument, I RECOMMEND that AVI's motion for summary judgment be GRANTED. Alternatively, due to Southall's disregard for this Court's Orders and apparent disinterest in pursuing this case, I recommend that this case be DISMISSED *sua sponte* as a sanction under Federal Rules of Civil Procedure 16(f) and 37(b)(2)(A)(v), and for failure to prosecute under Rule 41(b). This Report and Recommendation is based on the following facts and principles of law.

### A. Procedural Background

Southall, via counsel, filed this employment discrimination action against AVI under 42 U.S.C. § 1981 on January 27, 2021. (ECF 1). A preliminary pretrial conference was held on April 29, 2021, at which a discovery deadline of October 29, 2021, was set. (ECF 15, 16). On October 19, 2021, Southall's counsel filed a motion to withdraw, citing an irretrievable breakdown in attorney-client communications. (ECF 17). On October 27, 2021, AVI filed a motion to compel, asking the Court to compel Southall to provide complete responses to AVI's discovery requests served on April 28, 2021. (ECF 21).

After a hearing, the Court granted the motion to withdraw on October 28, 2021, and stayed the case for thirty days to allow Southall time to find new counsel. (ECF 22). The Court set a status conference for November 29, 2021, mailing a copy of the docket entry to Southall at his address of record. (ECF 23). However, three mailings to Southall from the Court in November 2021 were returned as undeliverable. (ECF 24-26).

Southall did appear at the November 29, 2021, status conference, however, and reported that he did not have a current mailing address. (ECF 27). The Court ordered Southall to obtain a new P.O. Box mailing address and provide it to the Clerk's Office. (*Id.*). Because Southall was still seeking counsel, the Court continued the stay of the case and set a telephonic status conference for January 5, 2022. (*Id.*).

Southall failed to appear for the January 5, 2022, telephonic status conference, and thus, the Court set a show-cause hearing and status conference for January 26, 2022. (ECF 28). The Court issued a Notice and Order to Southall on January 7, 2022, ordering him to provide the Clerk's Office with his current mailing address on or before January 21, 2022, and to timely

2

appear at the January 26, 2022, hearing and conference, warning him that if he failed to timely appear sanctions may issue, up to and including dismissal of his lawsuit. (ECF 29).

Southall failed to provide his new address by January 21st, but he did appear at the January 26th hearing. (ECF 30). He reported that he had been unable to secure successor counsel and provided the Court with his new mailing address. (*Id.*). The Court lifted the stay on the case, and Southall continued *pro se*. (*Id.*). In the next two months, however, several mailings to Southall from the Court were again returned as undeliverable. (ECF 31-33).

On April 5, 2022, the Court granted AVI's motion to compel—which remained unopposed by Southall—and ordered Southall to fully answer AVI's discovery requests and to file his current mailing address on or before April 19, 2022. (ECF 37). The Court warned Southall that his failure to timely complete either of these actions may result in sanctions, up to and including the dismissal of his case. (*Id.*). The Court also provisionally awarded AVI its attorney fees in filing the motion to compel, affording it to and including April 19, 2022, to file an affidavit in support of fees, and affording Southall to and including May 3, 2022, to file a response to the affidavit. (*Id.* at 4, 7). AVI timely filed its fee affidavit (ECF 44), but Southall never filed a response to it.

On April 8, 2022, AVI filed the motion for summary judgment, together with a memorandum, statement of material facts, and appendix of evidence. (ECF 38-41). AVI also filed its notice of summary judgment motion, which it served on Southall as required by Local Rule 56-1(a)(4). (ECF 42). As stated earlier, Southall did not file a response to the motion for summary judgment, and his time to do so has now passed. (ECF 43).

3

### *B. Factual Background*

For summary judgment purposes, the facts are recited in the light most favorable to Southall, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Having said that, Southall did not submit a statement of material facts as required by Local Rule 56-1(b)(2) or otherwise respond to AVI's summary judgment motion, and thus, AVI's Statement of Material Facts (ECF 40) remains undisputed. Given this lack of dispute, the Court will summarize the relevant facts in AVI's' Statement of Material Facts without citation to the record, except as shown for certain pieces of evidence.

Southall, who is African-American, applied on July 15, 2019, to work for AVI as a truck driver in its Fort Wayne branch. He completed and signed an application in AVI's branch office. Just above his signature on the application is a section called "Applicant's Statement and Acknowledgment." (ECF 41-2 at 4). The section required him to read and acknowledge several statements, including one stating: "I agree that any claim or lawsuit relating to my service with AVI Foodsystems, Inc. must be filed no later than one year after the date of the employment action that is the subject of the claim or lawsuit." (*Id.*). Below that provision, and immediately above his signature, the application states: "My signature below certifies that I agree to be bound by the terms and conditions stated in this application . . . ." (*Id.*).

After completing the application, Southall was interviewed by AVI's Operations Manager Shahaun Rivera, who is bi-racial. Rivera offered Southall a position as a Vending Route Driver in the Fort Wayne branch—a role in which Southall would distribute drinks and food to vending machines throughout the Fort Wayne area and into northwestern Ohio. Branch Manager Charles Foster, who is African-American, was in charge of all branch operations at the

4

Fort Wayne branch.

Before his first day, Southall received AVI's Team Member Handbook containing performance standards, including that mishandling of AVI funds and sleeping on the job are infractions that may result in immediate termination. (ECF 41-5; ECF 41-10 at 4-35). When he received the Handbook, Southall also signed AVI's Anti-Harassment, Anti-Discrimination and Inappropriate Conduct Policy. (ECF 41-6). Immediately above his signature, the Policy acknowledgment states:

> I agree that any claim or lawsuit relating to my service with AVI Foodsystems, Inc. must be filed no later than one (1) year after the date of the employment action that is the subject of the claim or lawsuit. I waive any longer statute of limitations, and I understand that my agreement may reduce the amount of time within which I would otherwise be permitted to file a claim or lawsuit under the law.

(*Id.* at 1).

Southall started work as a Vending Route Driver for AVI on August 5, 2019. A little more than a month later, he became a Delivery Route Driver, which was an easier job that required less effort because he no longer had to load vending machines. In both positions, Southall secured money bags containing cash from vending machines and returned them to the branch. When he picked up a money bag at an account, he would record the number of the bag on a log and then sign and date the log, which was left at the account.

On October 16, 2019, Southall picked up a money bag at AVI's account Paragon Tempered Glass, but he does not recall if he signed for it or what he did with the money bag. Southall believes there was more than $200 in the money bag. He told Rivera and Foster that he did not know what happened to the bag, but that he did not steal the money. The Bag Pickup Sheet confirms that Southall signed for the bag at the account on October 16, 2019. (ECF 41-9

5

at 3). During the investigation into the loss of the money bag, Southall provided AVI with a written statement indicating that he did not know what happened to the money bag. (*Id.* at 4). On December 5, 2019, Southall was issued a "1st and Final Written Warning" for failing to follow AVI's cash-handling policy and losing the money bag, which advised that future violations of company policy would lead to additional discipline "[u]p to and including termination." (*Id.* at 5).

On November 13, 2019, Southall was involved in a car accident unrelated to work, suffering knee, back, and neck injuries for which his physician prescribed muscle relaxers. Southall returned to work on November 18, 2019 without restrictions, but told the Warehouse Supervisor that he could not perform his job because he was in too much pain. As a result, AVI asked Southall to drive a truck for Sean Murphy—who was too young to drive a delivery vehicle under AVI policy—and help Murphy transport food trays into accounts.

While working with Southall, Murphy observed Southall appear to be sleeping inside client accounts, and Murphy complained to Kent Wortman, his Route Supervisor. At Wortman's advice, Murphy took photos of Southall appearing to be asleep in the break rooms of two different accounts on December 11 and 12, 2019 (ECF 41-11 at 3-4)—nearly a month after Southall was released to work without restrictions.

During his deposition, Southall admitted that he appears to be sleeping in the photos, but claimed he "wasn't sleeping . . . [and] just had [his] eyes closed for brief seconds or whatever . . . ." (ECF 41-1 at 7 p. 49). Yet, Southall later testified that he knew Murphy took the photos, stating: "I would just have my eyes closed and *I would wake up*, you know, I would just open them up and he was jumping back doing that." (*Id.* at 34 p. 159 (emphasis added)). Southall

6

claimed that as a result of the accident he was taking a muscle relaxant that made him sleepy, but he was not sure if he took the medication on December 11 and 12, 2019, or if he even had any of the prescription left by then.

On December 20, 2019, Southall met with Foster to discuss the photos after Murphy shared them with AVI management. Foster showed Southall the photos and asked if he was sleeping when they were taken. Southall confirmed that he was the person in the photos, but claimed he "wasn't sleeping really" but was just "sitting there relaxing waiting on [Murphy]." (*Id.* at 38 p. 174). Nevertheless, Foster terminated Southall's employment, explaining to Southall that in the photos it looked like he was sleeping on the job.

When asked why he thinks Foster, who is also African-American, would discriminate against him based on race, Southall responded: "That is a good question. I mean, you know." (*Id.* at 46 p. 178). Southall admitted that he never witnessed Foster or Rivera make any racial comments, and while Southall complained about a co-worker who "got out of line with [him] a little bit" (*id.* at 48 p. 188), he never complained about racial discrimination while employed at AVI.

Southall's employment application stated that "any misrepresentation or omission of facts called for may result in refusal to hire or, if hired, may result in my immediate dismissal at any time regardless of when the false answer or omissions are discovered." (ECF 41-2 at 4). In his application, Southall represented that he had never "been dismissed or asked to resign from any employer." (*Id.* at 2). However, during his deposition Southall admitted he had been involuntarily dismissed from at least two jobs. In fact, Southall admitted that he misrepresented the circumstances surrounding his departure from all four prior employers that he identified on

7

his application.

Southall represented in his application that he had been convicted of one crime—a felony drug conviction in 2004. (ECF 41-2 at 3). During his deposition, Southall initially denied that he had ever been convicted of any crime. However, when presented with evidence of his criminal record, he admitted that he had also been convicted of conversion in 2015 and public indecency in 2011. (ECF 41-3, 41-4). AVI has terminated employees and refused to hire applicants who have lied on their employment applications in the past, and states that it also would have terminated Southall had it learned of these misrepresentations during his employment. (ECF 41-10 ¶¶ 9, 10).

### C. Summary Judgment Legal Standard

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as

"summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted).  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial."  *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### D.  Discussion of AVI's Summary Judgment Motion

1. <u>Southall's Claim Is Untimely</u>

AVI first argues that it is entitled to summary judgment on Southall's race discrimination claim because it was untimely filed.  In that regard, Southall does not dispute that he signed two contractual statute of limitations provisions in his employment documents, which state that "any claim or lawsuit relating to [his] service with AVI . . . must be filed no later than one year after the date of the employment action that is the subject of the claim or lawsuit." (ECF 41-2 at 4; ECF 41-6 at 1).  It is undisputed that Southall was terminated on December 20, 2019, and that he filed this lawsuit more than a year later—on January 27, 2021.

"By enacting [42 U.S.C. §] 1981 without a statute of limitations, Congress implied that it is willing to live with a wide range of state statutes and rules governing limitations of action under section 1981." *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1205 (7th 1992).  "When Congress fails to provide a statute of limitations for a statutory cause of action such as 42 U.S.C. § 1981, the ordinary procedure is that federal courts borrow the most closely analogous statute of limitations under state law." *Id*. at 1203 (citing *Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989)).  "For § 1981 claims arising in Indiana, courts have applied Indiana's two-year statute of limitations applicable to personal injury actions." *Hardin v. CNA Ins. Cos.*, 103 F. Supp. 2d 1091, 1093 (S.D. Ind. 1999) (collecting cases); *see also White v. St. Lawrence Catholic*

*Schs.*, No. 1:20-cv-01129-RLY-MPB, 2020 WL 8258531, at *1 (S.D. Ind. July 9, 2020); *Robinson v. Chrysler Corp.*, No. IP 98-1161 C-M/S, 2000 WL 33309384, at *4 (S.D. Ind. Apr. 10, 2000).

In *Johnson v. Western & Southern Life Co.*, No. 1:13-cv-01659-SEB-DKL, 2014 WL 4370772 (S.D. Ind. Sept. 3, 2014), the plaintiff filed a race discrimination claim under 42 U.S.C. § 1981 and had signed a dispute resolution agreement in which she agreed to a six-month contractual statute of limitations. *Id.* at *3. The court observed that "Indiana law generally holds that contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." *Id.* at *5 (citation and internal quotation marks omitted). The court further noted that "[c]ourts assessing six-month limitations periods for claims similar to those brought by Ms. Johnson have found the period to be reasonable." *Id.* (citing *Taylor*, 966 F.2d at 1206). Accordingly, the court dismissed the plaintiff's § 1981 claims as untimely. *Id.*; *see also Cerna v. Prestress Servs. Indus. LLC*, No. 1:10-cv-188, 2011 WL 1884547, at *6-7 (N.D. Ind. May 18, 2011) (upholding a one-year contractual limitations period under Indiana law and dismissing the plaintiff's race discrimination claims filed under Title VII and § 1981); *see generally Farris v. W. & S. Life Ins. Co.*, No. 1:14-cv-421-WTL-DML, 2014 WL 5465947, at *4-5 (S.D. Ind. Oct. 28, 2014) (dismissing the plaintiff's Title VII discrimination claim as untimely under Indiana law where it was not brought within the six-month contractual limitations period).

Here, Southall does not dispute that he explicitly agreed to a one-year contractual limitations period in the employment-related documents he signed, or that a one-year contractual period is a reasonable amount of time under applicable law. Given that Southall was terminated

by AVI on December 20, 2019, and filed this lawsuit on January 27, 2021, his § 1981 race discrimination claim is time barred and can be dismissed on this basis alone.

    2. <u>Southall Does Not Show That His Race Was the "But-For Cause" of His Termination</u>

AVI further argues that not only is Southall's claim time barred, but Southall also fails to show that his race was the "but-for cause" of his termination, providing another basis upon which to grant summary judgment in AVI's favor.

To prevail on a § 1981 claim, "a plaintiff bears the burden of showing that race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Accordingly, "[a]t summary judgment, a district court must determine 'whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Griffin v. Cmty. Health Network*, No. 1:19-cv-04618-TWP-DLP, 2021 WL 2948823, at *5 (S.D. Ind. July 14, 2021) (alteration in original) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

On this record, no reasonable juror could conclude that AVI terminated Southall based on his race. Rivera, who is bi-racial, hired Southall and issued him the final written warning just five months later. *See Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) (finding an inference of non-discrimination arose where the plaintiff was "fired by the same person who hired him after a relatively short period of time"). Further, Southall was terminated by Foster, who is also African American. "[T]here can be no compelling inference of discrimination when the decision-maker is in the same protected category as the plaintiff." *Menefee v. Dynamic Educ. Sys., Inc.*, No. 07 C 6396, 2008 WL 4866016, at *3 n.3 (N.D. Ill. June 17, 2008) (citation omitted). In fact, when Southall was asked at his deposition what made him think Foster

terminated him because of his race, he offered no evidence, answering: "That is a good question. I mean, you know." (ECF 41-1 at 46 p. 178). Southall conceded that neither Foster nor Rivera made any racist comments, and that he never complained about race discrimination when employed at AVI.

Nor does Southall offer any evidence upon which a reasonable factfinder could infer that AVI's stated reason for his termination—that Southall was sleeping on the job—was a pretext for race discrimination. "The question is not whether [AVI's] stated reason was inaccurate or unfair, but whether [it] honestly believed the reasons it has offered to explain the discharge." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 724 (7th Cir. 2018) (citation omitted); *see also Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) ("It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." (citation omitted)).

Although Southall denied during his deposition that he was actually sleeping when the photos were taken, he agreed that he *appears* to be sleeping in two different accounts' break rooms while on duty. Yet, despite his denial, he later testified that when Murphy took the photos, he "would wake up," which suggests that he may indeed have been sleeping. (ECF 41-1 at 34 p. 159). AVI's Team Member Handbook specifically provides that sleeping on the job is an infraction that could result in immediate termination. (ECF 41-10 at 34). Before AVI received these two photos, Southall had already been issued a final written warning for mishandling funds (ECF 41-9 at 5)—another infraction that could have resulted in his immediate termination. (ECF 41-10 at 33). Given this record, even if AVI was wrong about Southall

actually sleeping on the job when the photos were taken, no reasonable juror could conclude that AVI *lied* about the stated reason for Southall's termination.

In sum, Southall fails to produce any evidence upon which a reasonable juror could conclude that Southall's race was the "but-for cause" of his termination, or that AVI lied about its stated reason for his termination. This provides an additional basis upon which to grant summary judgment in AVI's favor.

### 3. AVI's After-Acquired Evidence Defense

AVI also argues that it is entitled to summary judgment based on its after-acquired evidence defense, given that Southall made misrepresentations on his employment application about his prior employment and criminal history. "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995).

Here, AVI's Director of Human Resources states in an affidavit that AVI "has terminated employees and refused to hire applicants who have lied on their employment applications in the past." (ECF 41-10 ¶ 9). She further attests that "[h]ad AVI learned during Mr. Southall's employment that he lied on his employment application regarding his employment history and criminal records, AVI would have immediately terminated his employment." (*Id.* ¶ 10). Because Southall did not file a response to AVI's summary judgment motion, AVI's representation in this regard is undisputed, and thus, its after-acquired evidence defense applies here.

13

"[A]n employer's after-acquired evidence of misconduct for which it would have terminated the plaintiff bars him from seeking reinstatement or front pay and limits any back pay award to the wages he would have earned from the date he was terminated to the day his misconduct was discovered." *Johnson v. G.D.F., Inc.*, No. 07 C 3996, 2008 WL 4225836, at *2 (N.D. Ill. Sept. 12, 2008) (citing *McKennon*, 513 U.S. at 362); *see also Brown v. Yellow Transp., Inc.*, No. 08 C 5908, 2010 WL 152000, at *2 (N.D. Ill. Jan. 14, 2010); *Edwards v. BISYS, Inc.*, No. 1:03-cv-01784-JDT-WTL, 2005 WL 8167127, at *2 (S.D. Ind. June 29, 2005). Yet, AVI does not cite case authority that indicates its after-acquired evidence defense bars Southall's claim altogether. (ECF 39 at 16-18); *see Edwards*, 2005 WL 8167127, at *2 ("Despite BISYS's attempt to argue otherwise, it is clear that Edwards's claim for back pay, while severely limited by the after-acquired evidence doctrine, is not completely barred.").

As such, AVI's after-acquired evidence defense entitles it to summary judgment only to the extent that Southall seeks reinstatement or front pay, and limits any back pay award to the wages he would have earned from December 20, 2019, the date he was terminated, to the date his misrepresentations were discovered by AVI. *See Johnson*, 2008 WL 4225836, at *2. Given my conclusion *supra* that summary judgment should be granted in AVI's favor because Southall's race discrimination claim is time-barred and because he fails to produce evidence upon which a reasonable juror could conclude that his race was the "but-for cause" of his termination, AVI's after-acquired evidence defense applies only to damages and thus is a moot point.

### E.  *Alternatively, Southall's Claim Should Be Dismissed* **Sua Sponte** *as a Sanction*

Alternatively, due to Southall's failure to comply with this Court's Order dated April 5,

14

2022, to fully answer AVI's discovery requests and to file his current mailing address (ECF 37), and his lack of participation in this case since January 2022, Southall's case should be dismissed *sua sponte* as a sanction under Rules 16(f) and 37(b)(2)(A)(v), and for failure to prosecute under Rule 41(b).

"[A]n award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). The Seventh Circuit has cautioned that a court must use its dismissal power sparingly, as it is a "harsh sanction" which should "be employed only as a last resort." *Rice v. City of Chicago*, 333 F.3d 780, 786 (7th Cir. 2003) (citation omitted).

Here, the harsh sanction of dismissal is warranted and proportional to the circumstances presented. Southall was warned on April 5, 2022, that if he failed to fully answer AVI's discovery requests on or before April 19, 2022, or if he failed to file his current mailing address with the Court by that same date, he would be subject to sanctions, up to and including "dismissal of his case." (ECF 37 at 6); *see Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665 (7th Cir. 2006) (finding it more prudent not to dismiss a case unless the non-complying party has been sufficiently warned that further intransigence warrants dismissal). Despite this warning, Southall took no action to do either. *See Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) ("The demand that plaintiffs provide contact information is no esoteric rule of civil procedure, but rather the obvious minimal requirement for pursuing a lawsuit." (citation and quotation marks omitted)). Consequently, it appears that Southall has abandoned this case. Furthermore, the imposition of the lesser sanction of monetary sanctions in this instance would likely be ineffective given Southall's *in forma pauperis* status (ECF 2, 3), his failure to respond

15

to AVI's fee affidavit (ECF 37 at 4; ECF 44), and his failure to update his mailing address. *See Watkins v. Nielsen*, 405 F. App'x 42, 45-46 (7th Cir. 2010) (stating that the court should first explore the effectiveness of lesser sanctions before imposing the harsh penalty of dismissal).

Therefore, in the alternative to summary judgment, this case should be dismissed *sua sponte* as a sanction under Rules 16(f) and 37(b)(2)(A)(v) due to Southall's disregard for the Court's Orders, and under Rule 41(b) due to his apparent disinterest in further prosecuting this case.

### F. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge recommends that AVI's motion for summary judgment (ECF 38) be GRANTED and that this case be DISMISSED with prejudice. Alternatively, the undersigned recommends that this case be DISMISSED with prejudice *sua sponte* as a sanction under Rules 16(f), 37(b)(2)(A)(v), and 41(b).

The Clerk is directed to send a copy of this Report and Recommendation to Southall at his last known address of record and to AVI's counsel. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See Brokaw v. Brokaw*, 128 F. App'x 527, 530 (7th Cir. 2005); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

SO ORDERED. Entered this 27th day of July 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge